DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT T. FROST** a/k/a **ROBERT FROST,**
Appellant,

v.

**CHRISTIANA TRUST,** a Division of Wilmington Savings Fund Society,
FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-18, **JP
MORGAN CHASE BANK, NATIONAL ASSOCIATION, MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,** as Nominee for
**AMERICA'S WHOLESALE LENDER, IMPERIAL POINT ASSOCIATION,
INC.,**
Appellees.

No. 4D15-534

[ June 22, 2016 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Kathleen D. Ireland, Senior Judge; L.T. Case No.
09051794 (11).

Michael J. Wrubel of Michael Jay Wrubel, P.A., Davie, for appellant.

Thomas Wade Young and Joseph B. Towne of Lender Legal Services,
LLC, Orlando, for Appellee Christiana Trust.

PER CURIAM.

Robert Frost appeals the final judgment of foreclosure entered in favor
of Christiana Trust, a Division of Wilmington Savings Fund Society, FSB,
as Trustee for Normandy Mortgage Loan Trust, Series 2013-18
("Christiana Trust"). Frost argues that Christiana Trust failed to prove its
own standing and the standing of the original plaintiff, JP Morgan Chase
Bank, N.A. ("Chase"). Because Christiana Trust failed to prove Chase had
standing at the inception of the case, we reverse.

On September 22, 2009, Chase filed a foreclosure complaint alleging
that it was the owner and holder of the Note and Mortgage or the party
entitled to enforce the subject Note. The original lender on the Note was
Washington Mutual Bank, F.A. ("WAMU"). The Note attached to the
complaint did not have any endorsements. Frost filed an answer and

raised several affirmative defenses, including lack of standing. Chase substituted Christiana Trust as party plaintiff. The case eventually proceeded to trial.

At trial, a Chase loan research officer testified that WAMU closed on September 25, 2008 and the Federal Deposit Insurance Corporation ("FDIC") became its receiver. On that same day, Chase and the FDIC executed a Purchase and Assumption Agreement ("PAA"). The loan officer testified that the PAA covers "certain assets" including "numerous home loans" that Chase purchased from the FDIC as the receiver for WAMU.

In addition to the PAA, Christiana Trust introduced a document tracking report from a Chase servicing system into evidence. The report stated and the loan officer testified that Frost's Note and Mortgage were in Chase's possession as of July 20, 2009. Christiana Trust also introduced a default letter that WAMU sent to Frost on July 29, 2009. The heading of the letter stated "WAMU is becoming CHASE."

Christiana Trust introduced the original Note with an undated blank endorsement from WAMU. After Christiana Trust rested its case, defense counsel attempted to offer an excerpt from a deposition regarding the endorsement on the Note. Christiana Trust objected, arguing the deposition was not relevant because Christiana Trust was not relying on the endorsement to prove standing. The court ruled that the endorsement was not relevant to Chase's standing at the inception of the suit. The court also found that the endorsement was placed on the Note after Chase filed the complaint and declined to hear any further testimony related to the endorsement.

The main issues on appeal are whether Chase had standing prior to the commencement of the action and whether Christiana Trust had standing at the time of trial.

"This court reviews the sufficiency of the evidence to prove standing to bring a foreclosure action *de novo*." *Lamb v. Nationstar Mortg., LLC*, 174 So. 3d 1039, 1040 (Fla. 4th DCA 2015).

"[T]he plaintiff must prove that it had standing to foreclose when the complaint was filed." *McLean v. JP Morgan Chase Bank Nat'l Ass'n,* 79 So. 3d 170, 173 (Fla. 4th DCA 2012). When there is a substitute of the party plaintiff, the substituted plaintiff may rely on the standing of the original plaintiff at the inception of the case, but it "must prove its own standing when judgment is entered." *Sandefur v. RVS Capital, LLC,* 183 So. 3d 1258, 1260 (Fla. 4th DCA 2016) (emphasis omitted).

Standing may be established from the plaintiff's status as the holder of the note. *Perez v. Deutsche Bank Nat'l Trust Co.*, 174 So. 3d 489, 490–91 (Fla. 4th DCA 2015). A "holder" is defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." § 671.201(21)(a), Fla. Stat. (2009). "Thus, to be a holder, the instrument must be payable to the person in possession or indorsed in blank." *Murray v. HSBC Bank USA*, 157 So. 3d 355, 358 (Fla. 4th DCA 2015) (citing § 671.201(5), Fla. Stat. (2009)).

A plaintiff also may establish standing as a nonholder in possession with the rights of a holder. *Id.* at 357–58 (citing § 673.3011(2), Fla. Stat.). Ownership, assignment, or transfer of the note become important to the analysis of standing "when the plaintiff is a nonholder in possession of the note with the rights of a holder." *Angelini v. HSBC Bank USA, N.A.*, 4D14–216, 2016 WL 13519533, at *1 (Fla. 4th DCA Feb. 10, 2016) (quoting *Rodriguez v. Wells Fargo Bank, N.A.*, 178 So. 3d 62, 67 (Fla. 4th DCA 2015) (Conner, J., concurring)). Accordingly, "[a] bank employee's trial testimony that the plaintiff bank owned the note before the inception of the lawsuit is sufficient [in some cases] to resolve the issue of standing." *Fiorito v. JP Morgan Chase Bank, Nat'l Ass'n*, 174 So. 3d 519, 521 (Fla. 4th DCA 2015).

*Holder*

In this case, Christiana Trust failed to prove that Chase held the Note when it filed the complaint. The original payee on the Note is WAMU and the copy of the Note attached to the complaint did not have any endorsements. Although there was a blank endorsement on the Note at the time of trial, Christiana Trust did not present any evidence regarding the date of the endorsement. Christiana Trust's counsel also stated that it was not relying on the endorsement to prove standing. Because Chase did not qualify as a holder, Christiana Trust had to prove that Chase was a nonholder in possession with the rights of a holder in order to establish standing.[1]

*Nonholder in Possession with Rights of a Holder*

Christiana Trust argues that Chase was a nonholder in possession with the rights of a holder because the FDIC was the successor to "all rights,

---

[1] There was also no evidence that Chase was "[a] person not in possession of the instrument who is entitled to enforce the instrument pursuant to s. 673.3091 or s. 673.4181(4)." § 673.3011(3), Fla. Stat. (2009).

titles, powers and privileges" of WAMU and Chase acquired FDIC's rights by virtue of the PAA. Frost contends that the PAA was insufficient to establish that Chase was entitled to enforce the Note. Specifically, Frost argues that: (1) the language of the PAA does not adequately identify which loans were acquired in the transaction; (2) Christiana Trust failed to provide a schedule of the loans to prove that Frost's loan was part of the transaction; and (3) Christiana Trust failed to prove that Chase acquired more than the servicing rights of the loan.

As Frost argues, the language of the PAA alone does not prove that Chase acquired all of WAMU's assets. For example, one of the introductory clauses states "the Assuming Bank [Chase] desires to purchase *substantially all* of the assets . . . of the Failed Bank [WAMU]" and Section 3.1 of the PAA notes exceptions to the purchase. (Emphasis added). Section 3.1 states in pertinent part "*[s]ubject to Sections 3.5, 3.6, 4.8*, the Assuming Bank [Chase] hereby purchases from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right, title, and interest of the Receiver in and to all of the assets." (Emphasis added). Section 3.5 and the related schedule lists assets not acquired by Chase.

In *Snyder v. JP Morgan Chase Bank, National Association,* 169 So. 3d 1270 (Fla. 4th DCA 2015), we discussed issues similar to the ones raised in this case. In *Snyder,* a borrower challenged Chase's standing to bring a foreclosure action. *Id.* at 1271. At trial, Chase introduced the purchase agreement for the WAMU assets, and its witness testified that Chase "purchased the assets of WAMU through the [FDIC] in September of 2008, and [the note] was part of the purchase." *Id.* at 1271. On appeal, we held that Chase did not have possession of the note when it filed suit and therefore did not prove its entitlement to enforce the note. *Id.* at 1274. We also noted:

> Whether [Chase] even owned the note on the date of filing suit is questionable. It relies on the purchase agreement between Chase, FDIC, and WAMU to prove that it purchased this loan, but the purchase agreement has many caveats where the Assuming Bank (Chase) could refuse to acquire assets, thus reducing the purchase price. . . . . To add to the confusion over who owned the note, the notice of default was sent out, not by Chase, but by WAMU. No explanation of why WAMU would be continuing to act on a loan that it did not own was provided in the testimony, thus suggesting that the loan was not as yet transferred to Chase.

4

*Id.* at 1273.

This case involves the same purchase agreement as *Snyder* and includes the same caveats. Frost points to another caveat: Section 3.6(a)(iii) states in relevant part, "[t]he Receiver may refuse to sell to the Assuming Bank . . . any Asset or asset essential to the Receiver as determined by the Receiver in its discretion . . . ." Based on Section 3.6(a), Frost argues that it is possible that the FDIC refused to sell Frost's Note to Chase because the loan was deemed an asset essential to FDIC.

An important distinction between this case and *Snyder* is that, in this case, Chase proved that it had possession of the Note before the case commenced. The loan officer testified that Chase gained possession of the Note on July 20, 2009. Christiana Trust offered a report from the Chase system, which stated that the Note was scanned into the system on July 20, 2009. But although Christiana Trust proved that Chase had possession of the Note, there are other deficiencies in this case that call into question Chase's ownership of the Note when it filed suit in September 2009.

As Frost argues, there is no competent, substantial evidence that the Note was delivered to Chase for the purpose of giving Chase the right to enforce the instrument. There is some indication that WAMU may have had some control over the Note even after Chase gained possession on July 20, 2009. WAMU sent the default letter to Frost on July 29, 2009, which states "WAMU is becoming Chase." Like in *Snyder,* there is no explanation of why WAMU would be continuing to act on a loan that it did not own. Similarly, Chase did not explain how or why WAMU would have placed a blank endorsement on the Note after Chase gained possession. The loan officer's testimony established that the Note did not have an endorsement when it was scanned into the Chase system. Both the default letter and the blank endorsement suggest that WAMU still owned the Note after Chase gained possession.

There was also a lack of testimony about ownership. The loan officer testified that the PAA covered "numerous home loans" and that Chase acquired "certain assets and liabilities." Unlike the witness in *Snyder,* the loan officer never explicitly testified that Chase owned the Note or that the Note was one of the assets transferred by virtue of the PAA. *See Fiorito,* 174 So. 3d at 521 (rejecting Chase's argument that it acquired standing through the September 25, 2008 "merger" with WAMU where there was no testimony if and when Chase became owner of the Note by virtue of the merger).

Frost relies on the loan officer's testimony to support his argument that there was insufficient evidence about the specific loans Chase acquired. Christiana Trust's counsel asked the loan officer: "[W]as there ever a schedule created with [the PAA] that -- or included in that document that tells you and tells everyone, these are the loans that were included when Washington Mutual was subsumed by Chase?" She responded: "Yes, there is a schedule that states what we did and did not assume." Counsel then asked: "And, would home mortgage loans been one of the things that Chase did assume?" She replied: "Yes."

The PAA does not make any reference to a schedule of specific loans acquired. When the loan officer testified that there was a schedule of what Chase did and did not assume, she may have been referring to Schedule 3.5, which is attached to the PAA. Schedule 3.5 lists "certain assets not purchased." A schedule of the loans purchased in the PAA would have been helpful in determining which loans were transferred. However, based on the loan officer's testimony and the language of the PAA, it is not clear that such a schedule ever existed.

Finally, Frost argues that there is evidence that Chase acquired only WAMU's servicing rights via the PAA. Section 3.1 states that "the Assuming Bank [Chase] specifically purchases all mortgage servicing rights and obligations of the Failed Bank [WAMU]." As previously noted, the loan officer never testified that Chase purchased Frost's Note via the PAA. However, she made repeated references to Chase servicing the Note. Given the many caveats in the PAA, Christiana Trust's failure to prove that Chase actually purchased the Note, instead of simply acquiring the servicing rights, is fatal to its case. Even if Chase eventually purchased the loan, there is insufficient evidence that this purchase occurred prior to the commencement of this action in September 2009.

Despite the PAA and Chase's possession of the Note, Christiana Trust failed to prove that Chase was entitled to enforce the Note at the inception of this case. Because Christiana Trust failed to prove Chase had standing at the inception of the case, Christiana Trust's standing at the time of trial was irrelevant.

Accordingly, we reverse the final judgment and remand for entry of an order of involuntary dismissal of the foreclosure action.

*Reversed and Remanded.*

CIKLIN, C.J., TAYLOR and MAY, JJ., concur.

\*        \*        \*

*Not final until disposition of timely filed motion for rehearing.*